UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CIPRIANI CONSTRUCTION CORP.,

        Plaintiff,

    -v-                      1:23-CV-771

GRN ELECTRIC AND SOLAR INC.,
and KIRK FERRIER,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| HODGSON RUSS LLP<br>Attorneys for Plaintiff<br>The Guaranty Building<br>140 Pearl Street, Suite 100<br>Buffalo, NY 14202 | JAMES ZAWODZINSKI, JR., ESQ.<br>RYAN K. CUMMINGS, ESQ. |
| SCHILLINGER &<br>   ASSOCIATES, PLLC<br>Attorneys for Defendant Kirk Ferrier<br>11 North Pearl Street, Suite 1700<br>Albany, NY 12207 | ERIC K. SCHILLINGER, ESQ. |

DAVID N. HURD
United States District Judge

## **DECISION and ORDER**

## I. **INTRODUCTION**

    Plaintiff Cipriani Construction Corp. ("Cipriani") was hired to build a solar

project. Cipriani subcontracted the electrical work to defendant GRN Electric

and Solar Inc. ("GRN Electric"). GRN Electric began the work and Cipriani made payments that totaled $920,000. But GRN Electric's crew eventually walked off the job site and defendant Kirk Ferrier ("Ferrier"), GRN Electric's principal and owner, demanded $375,000 more to finish the work.

Cipriani refused to pay. Cipriani hired a different outfit, which completed the work for another million dollars or so. Cipriani later won an arbitration award against GRN Electric. And Cipriani confirmed that award in Supreme Court, Albany County, which has entered a money judgment in its favor. But neither GRN Electric nor Ferrier have paid back a dime of the $920,000.

On June 20, 2023, Cipriani filed this civil action in the U.S. District Court for the Southern District of New York alleging, *inter alia*, that GRN Electric and Ferrier violated certain state-law requirements by failing to maintain in trust and/or properly account for the $920,000 that Cipriani had paid them under the parties' written agreement. Dkt. No. 1. But because Cipriani had mislaid venue in the Southern District, the action was *sua sponte* transferred to this judicial district on June 26, 2023. Dkt. Nos. 5, 9–11.

On July 5, 2023, Cipriani filed a six-count amended complaint that asserts claims under Article 3-A of New York Lien Law seeking an accounting (Count One) and for the alleged diversion of project funds that should have been held in trust (Count Two); a claim under New York General Business Law § 349 for deceptive practices (Count Five); and state common law claims for fraud

(Count Three), negligent misrepresentation (Count Four), and conversion (Count Six). Dkt. No. 14. After the time period in which to file an answer expired, Cipriani requested the entry of default against GRN Electric *and* Ferrier, Dkt. No. 22, which was certified on October 16, 2023, Dkt. No. 23.

On December 29, 2023, Cipriani moved for the entry of a default judgment in the amount of $920,000 plus costs and fees. Dkt. No. 25. However, on the date on which any opposition was due, counsel for defendant Ferrier entered a notice of appearance, Dkt. No. 27, and sought an extension of time in which to respond to Cipriani's motion for default judgment, Dkt. No. 28, which was granted over Cipriani's opposition, Dkt. Nos. 29, 30. Thereafter, defendant Ferrier cross-moved to vacate or set aside his default (but not the entry of default against his co-defendant GRN Electric). Dkt. No. 31. Cipriani has opposed vacatur. Dkt. No. 32.

Both motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  BACKGROUND

Cipriani is a general contractor organized as a New York corporation with headquarters in Colonie, New York. Am. Compl. ¶¶ 2, 7. GRN Electric is an electrical subcontractor organized as a Delaware corporation based out of

Long Branch, New Jersey. *Id.* ¶¶ 4, 8. Ferrier, the CEO and owner/operator of GRN Electric, also resides (or resided) in New Jersey.[1] *Id.* ¶¶ 3, 9.

On August 24, 2021, Cipriani was hired to construct a solar project in Johnstown, New York (the "Project"). Am. Compl. ¶ 10. Cipriani met with Ferrier and then hired GRN Electric to handle certain electrical work on the Project. *Id.* ¶¶ 11–12. Cipriani and GRN Electric entered into a "Standard Form of Agreement Between Contractor and Subcontractor for the Project" (the "Contract"). *Id.* ¶¶ 11–13 & Ex. A. The Contract set out a seven-week timeline for "substantial completion." *Id.* Cipriani made payments totaling $920,000 in accordance with the Contract. Am. Compl. ¶ 15.

On December 30, 2021, just one day before "substantial completion" was required under the Contract, Ferrier directed GRN Electric's work crew to walk off the job. Am. Compl. ¶ 16. Later that day, Ferrier, on behalf of GRN Electric, e-mailed to Cipriani a "change order" for $375,000 to be paid in a series of three payments. *Id.* ¶ 17. Ferrier's e-mail stated that GRN Electric would not resume work at the site until the first of these three payments had been made. *Id.* Cipriani requested a detailed explanation for the additional costs, but defendants failed to provide one.[2] *Id.* ¶¶ 19–20.

---

[1] Other filings suggest that Ferrier might now reside in Texas. Neither fact would necessarily establish his domicile.

[2] In his declaration, Ferrier avers that Cipriani concealed the true nature of the site conditions, which led to a series of increased costs. Dkt. No. 31-4.

- 4 -

On January 6, 2022, in accordance with § 3.5 of the Contract, Cipriani sent to GRN Electric, through Ferrier, a formal written notice directing them to resume work "within five working days" or risk being replaced by another subcontractor and charged for the difference in cost. Am. Compl. ¶ 21 & Ex. B. But GRN Electric's crew did not resume work. Am. Compl. ¶ 22.

On January 21, 2022, Cipriani terminated the Contract for cause based on GRN Electric's failure to timely remedy its breach; *i.e.*, its failure to resume work on the Project. Am. Compl. ¶ 23 & Ex. C. The January 21 letter also identified certain deficiencies with GRN Electric's work on the Project. Am. Compl. ¶ 24–27. Cipriani later hired a substitute electrical contractor, which completed the work at a substantial additional cost. *See id.* ¶ 40.

On February 7, 2022, in accordance with § 76 of New York's Lien Law, Cipriani sent to GRN Electric, through Ferrier, a letter demanding that GRN Electric provide a verified statement setting forth detailed information about the identities of its materialmen and sub-subcontractors as well as the fate of the $920,000 in scheduled payments that Cipriani had already made under the Contract. Am. Compl. ¶ 28 & Ex. D.

Cipriani's February 7 Letter "specifically instructed" GRN Electric "not to utilize any trust funds to pay for anything except those expenses authorized by New York Lien Law § 71(1) or (2)" and cautioned that "[f]ailure to abide by this provision can result in personal liability of the officer or director who

makes such payment." Am. Compl. ¶ 29 & Ex. D.  To date, neither GRN Electric nor Ferrier have provided an accounting.  Am. Compl. ¶ 30.

On March 4, 2022, in accordance with § 6.1 of the Contract, Cipriani filed a Demand for Arbitration with the American Arbitration Association ("AAA") and served it on both GRN Electric and Ferrier.  Am. Compl. ¶¶ 41–44 & Ex. E.  In response, Ferrier petitioned in Supreme Court, Albany County to stay the arbitration as to him because he was not a party to the Contract between Cipriani and GRN Electric.  Am. Compl. ¶ 45 & Ex. F.  Thereafter, Cipriani filed an amended arbitration claim that removed Ferrier, Am. Compl. ¶ 46 & Ex. G, and Ferrier's petition was denied as moot, Am. Compl. ¶¶ 47–48.

Between July 8, 2022, and August 26, 2022, the AAA conducted a series of arbitration proceedings against GRN Electric.  Am. Compl. ¶¶ 49–57.  But neither GRN Electric nor Ferrier participated.  *Id*.  After a hearing at which the arbitrator heard evidence, Cipriani was awarded $1,263,951, plus simple interest at 9% and $20,100 in costs and fees (the "Award").  *Id*. ¶ 58.

On September 13, 2022, Cipriani filed a verified petition in Supreme Court, Albany County, to confirm the arbitration Award.  Am. Compl. ¶ 60 & Ex. M.  Although GRN Electric and Ferrier were both served, neither party appeared to oppose the state-court petition.  Am. Compl. ¶¶ 61–62.  The state court later confirmed the arbitration Award and entered a money judgment in favor of Cipriani on November 21, 2022.  *Id*. ¶¶ 63–64.  Cipriani has tried

to satisfy its state-court judgment but has been unable to find any assets still held in GRN Electric's name.  *Id*. ¶¶ 65–66.

## III. DISCUSSION

Cipriani has moved for the entry of a default judgment against defendants GRN Electric and Ferrier, jointly and severally, in the amount of $920,000, together with an award of costs and reasonable attorneys' fees.  Broadly speaking, Cipriani contends that Ferrier diverted the scheduled payments made to GRN Electric for his own personal use in violation of a statutory scheme that governs payments for construction projects under New York law.

Cipriani relies primarily on Article 3-A of New York's Lien Law, which provides "special protections, through the automatic establishment of statutorily protected trust funds, to ensure payment of contractors and laborers on construction projects." *Tutor Perini Bldg. Corp. v. N.Y. City Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 500 (S.D.N.Y. 2021).  "Article 3-A of the Lien Law creates 'trust funds out of certain construction payments or funds to assure payment of subcontractors, suppliers, architects, engineers, laborers, as well as specified taxes and expenses of construction.'" *Id*. (quoting *Aspro Mech. Contracting, Inc. v. Fleet Bank*, 1 N.Y.3d 324, 328 (2004)).

"An Article 3-A trust arises automatically by operation of law when fees are paid to the contractor or received by the owner in connection with an improvement of real property." *Interworks Sys. Inc. v. Merch. Fin. Corp.*, 604

F.3d 692, 695 (2d Cir. 2010). "Until all trust fund beneficiaries have been satisfied, it is an unlawful diversion of trust fund assets for the contractor or owner to use any of the trust fund assets for any purpose other than satisfying the claims of beneficiaries." *Id.* "If the contractor or owner unlawfully diverts the trust assets before a trust beneficiary is satisfied, that beneficiary may recover the trust assets from anyone who has received the assets with knowledge of their trust status." *Id.* at 696.

Notably, "[l]iability under Article 3-A extends to the 'officers and directors of a corporate trustee,' and, if they 'cause the corporation to misappropriate trust property,' they 'will be personally liable for participation in a breach of trust.'" *Tutor Perini Bldg. Corp.*, 525 F. Supp. 3d at 501 (quoting *Atlas Bldg. Sys., Inc. v. Rende*, 653 N.Y.S.2d 694 (2d Dep't 1997)).

### A. <u>Defendant Ferrier's Cross-Motion to Vacate Default</u>

Ferrier has moved to set aside the entry of default against him and for leave to serve a late answer. Dkt. No. 31-1. According to Ferrier, his default was the result of a mistake: he was not a party to the Contract, and after he was successful in getting himself removed from the arbitration against GRN Electric he believed that he had no further obligation to participate. *Id.* In his view, Cipriani would not be prejudiced by his filing of a late answer in this action because it has already secured an arbitration award and money judgment against GRN Electric. *Id.* Finally, Ferrier claims that he has

meritorious defenses in this suit: he was not a trustee of the funds, and in any event GRN Electric paid its own sub-subcontractors for their work. *Id.*

Cipriani opposes relief. According to Cipriani, Ferrier's conduct is just a further attempt to delay recovery of the nearly $1 million that he has kept for himself. As Cipriani explains, Ferrier "gutted" GRN Electric of its assets and then fled to Texas, where he has opened up shop under a new name. Cipriani contends that Ferrier, as GRN Electric's principal, was obligated to respond to its written demands for books and records and that his failure to do so on behalf of his company gives rise to a presumption that he unlawfully diverted the funds. In Cipriani's view, this conclusion is supported by the fact that Ferrier has never offered any explanation of where the money went.

Rule 55 of the Federal Rules of Civil Procedure governs a party's request for vacatur of a default or of a default judgment, the former of which may be set aside for "good cause." FED. R. CIV. P. 55(c). Although the Rule does not say what counts as "good cause," the Second Circuit has "established three criteria that must be assessed in order to decide whether to relieve a party from default." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC* ("*Bricklayers*"), 779 F.3d 182, 186 (2d Cir. 2015) (citation omitted).

These criteria include: (1) the willfulness of the defaulting party; (2) the existence of any meritorious defenses; and (3) prejudice to the non-defaulting

party.'" *Bricklayers*, 779 F.3d at 186 (quoting *Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013). Courts may also consider other "equitable factors," such as whether the defaulting party's "mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil Corp. v. Diakhuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

Measured against this legal standard, defendant Ferrier's motion to set aside his default must be granted. This bottom-line conclusion flows from a relatively simple premise: "defaults are generally disfavored and are reserved for rare occasions." *Enron Oil Corp.*, 10 F.3d at 96. As a result, "when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id*.

First, there is substantial doubt about whether Ferrier's default can fairly be characterized as "willful." Cipriani argues that Ferrier's claim; *i.e.*, that he is a lay person who was confused about his legal obligations here, does not qualify as "excusable neglect." That may be true. But "excusable neglect" is a more rigorous standard than the "willfulness" requirement that governs a request for vacatur under Rule 55(c). *See, e.g.*, *United States v. Starling*, 76 F.4th 92, 102 (2d Cir. 2023).

Unlike excusable neglect, willfulness in the default judgment context looks to "egregious or deliberate conduct," and even "grossly negligent" actions do not necessarily qualify. *Starling*, 76 F.4th at 102 (quoting *Am. All. Ins. Co.*,

*Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)). Ferrier points out that he is not a party to the Contract and that he already successfully petitioned to be removed from the arbitration proceedings. Based on those events, he claims that he reasonably believed this federal-court action was repetitive or duplicative of those proceedings and did not require further action from him.

That explanation is enough for now. Cipriani makes much of the fact that Ferrier has chosen not to defend GRN Electric, his former business entity, but that is a choice he is permitted to make. And although Cipriani casts Ferrier's conduct as intentional or obstructionist of its own efforts, whether that justifies relief is a question better settled on the merits.

Second, it appears that Ferrier has a meritorious defense to Cipriani's claims. "A meritorious defense exists if based on the defendant's version of events, the factfinder has some determination to make." *Sibley v. Choice Hotels Int'l, Inc.*, 304 F.R.D. 125, 131 (E.D.N.Y. 2015) (citation omitted).

In broad strokes, Cipriani's claims against Ferrier accuse him of diverting funds for which Cipriani was the alleged beneficiary. Aside from the fact that this argument seems to stand the contractor / subcontractor relationship on its head, Ferrier's submissions tend to show that GRN Electric has paid its *own* subcontractors, employees, and/or materialmen for their work. Thus, at the very least, there are factual disputes over the validity of Cipriani's theory of relief against Ferrier in his personal capacity.

Third and finally, Cipriani has not established sufficient prejudice as that term is defined in the Rule 55(c) context. "Prejudice results when delay causes the loss of evidence, creates increased difficulties of discovery or provides greater opportunity for fraud and collusion." *Sibley*, 304 F.R.D. at 131 (citation omitted).

The parties seem to agree that GRN Electric, as on ongoing business concern, has already been "gutted." So it is hard to see how this litigation raises any time-sensitive issues there. And Ferrier, not some other business entity, still remains as a defendant in this action. If Cipriani's claims against Ferrier have merit, they might result in a money judgment against Ferrier in his personal capacity. So there is less of a risk that evidence against him will be lost or that letting this case proceed to the merits will lead to some kind of alleged fraud or collusion.

Cipriani argues that Ferrier's conduct has thus far thwarted its attempts to recoup the money it paid to GRN Electric and argues that delaying matters by permitting Ferrier to defend in this litigation only make it more likely that Cipriani will be unable to collect against Ferrier himself. But that is putting the cart before the horse. As Ferrier points out, Cipriani has already secured an arbitration Award against the only named counterparty to the written Contract—GRN Electric. Cipriani has confirmed that arbitration Award in state court, which reduced it to a money judgment.

Cipriani emphasizes that its attempts to satisfy its judgment against GRN Electric's assets have been unsuccessful. But that does not necessarily mean that Cipriani is entitled to come after Ferrier next. Bypassing the corporate form is not permissible just because it would make satisfaction of a money judgment easier. It must be legally justified. That question remains to be answered. In sum, the balance of the factors favors vacatur of the default entered against Ferrier. Accordingly, Ferrier's cross-motion to set aside his default will be granted.

## B. <u>Plaintiff's Motion for Default Judgment</u>

Cipriani argues that it is still entitled to a default judgment against GRN Electric, which remains in default. As Cipriani explains, it has established that it paid GRN Electric a total of $920,000 in scheduled payments under the Contract. In Cipriani's view, GRN Electric "had not yet earned" this money. According to Cipriani, it demanded from GRN Electric an accounting of these funds on February 7, 2022, but received no response.

Rule 55 of the Federal Rules of Civil Procedure provides a two-step process for obtaining a default judgment against a defaulting party. FED. R. CIV. P. 55(a)–(b). The first step is to obtain an entry of default from the Clerk of the Court. FED. R. CIV. P. 55(a). The second step is to seek a default judgment, which must ordinarily be granted by the court unless the claim is for a sum certain. FED. R. CIV. P. 55(b)(1)–(2).

"[A] party's default is deemed an admission of all well pleaded allegations of liability." *Greyound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). But it is not an admission of damages. *Id.* And "it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Lab'ys Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (cleaned up).

Upon review, Cipriani's motion for default judgment against GRN Electric will be granted. "New York's Lien Law is remedial in nature and intended to protect those who have directly expended labor and materials to improve real property at the direction of the owner or a general contractor." *West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 87 N.Y.2d 148, 157 (N.Y. 1995).

This body of state law imposes obligations on subcontractors. N.Y. LIEN LAW § 70(7). For instance, the "trust assets of which a . . . subcontractor is trustee shall be held and applied to the following expenditures:

> (a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;
>
> (b) payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

>> (c) payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;
>
> (d) payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;
>
> (e) payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement, including home improvement, or public improvement;
>
> (f) payment to which the owner is entitled pursuant to the provisions of section seventy-one-a of this chapter.

N.Y. LIEN LAW § 72(2).

A review of New York Lien Law leaves doubt about whether Cipriani, as general contractor on the Project, could ultimately establish a claim against GRN Electric, its former subcontractor. First, absent from the statutory list set forth above is a clear indication that the statutory trust obligations run in the other direction; *i.e.*, that a *subcontractor* must hold in trust the money it receives for the benefit of its *general contractor*. Second, Ferrier's declaration in support of his cross-motion avers that the money Cipriani paid to GRN Electric was appropriately disbursed under this body of law: the company paid its own subs, materials suppliers, and work crew.

Third, and finally, the parties' Contract provided for scheduled payments that were tied to specific milestones. Those milestones were defined as a percentage of completion of the scope of the work. Cipriani concedes that it made payments in accordance with these milestones. So it is a little unclear how those payments were not "earned" by GRN Electric. Perhaps Cipriani should have sent an inspector to the Project at each milestone to ensure the work was being done to specifications before disbursing each round of funds.

Even so, these observations, whether considered individually or together, are not enough to deny relief to Cipriani. GRN Electric has not appeared in this action and has not tried to vacate its own default. Cipriani has already won an arbitration award against GRN Electric and reduced that award to a state-court money judgment. So the *fact* of GRN Electric's breach of the Contract has been established elsewhere and remains unchallenged here.

Further, New York Lien Law does impose a fairly extensive and technical set of accounting requirements on participants to construction projects. And those obligations endure for the duration of the construction project. GRN Electric's breach, whatever its precise nature, occurred while the project was still underway. Although Cipriani's current briefing is focused on using the statutory state-law trust rules as a means to an end—*i.e.*, reaching Ferrier personally—the force of its submissions, combined with the admitted facts in the operative pleading, still justify the conclusion that it is entitled to take a

- 16 -

default money judgment against the company. Accordingly, Cipriani's motion for default judgment against GRN Electric will be granted.

## IV. CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiff's motion for a default judgment is GRANTED in part and DENIED in part;

2. Plaintiff's motion for a default judgment against GRN Electric is GRANTED;

3. Plaintiff's motion for a default judgment against Ferrier is DENIED;

4. Defendant Ferrier's cross-motion to set aside his default is GRANTED;

5. The Clerk of the Court is directed to VACATE the entry of default (Dkt. No. 23) as against defendant Ferrier;

6. Defendant Ferrier shall FILE and SERVE an answer to plaintiff's amended complaint on or before March 5, 2024;

7. Defendant GRN Electric remains in default; and

8. Plaintiff is entitled to a default judgment against GRN Electric in the amount of $920,000.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated: February 20, 2024
        Utica, New York.